IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KELLY NOONAN et al.                 :

                                    :

v.                                  Civil Action WMN-04-1571

                                    :

JOINT CARPENTRY APPRENTICESHIP
COMMITTEE OF WASHINGTON, D.C.       :
AND VICINITY et al.

MEMORANDUM

Before the Court is Defendants' Motion for Summary Judgment.
Paper No. 33.  The motion is fully briefed.  Upon a review of the
pleadings and the applicable case law, the Court determines that
no hearing is necessary and that the motion will be granted.

**I. FACTUAL BACKGROUND**

Plaintiffs Kelly Noonan and Barbara Ann Wyrostek were long-
time clerical employees of the Joint Carpentry Apprenticeship
Education and Training Trust Fund (the Fund).  The Fund operates
a training school in Prince Georges County, Maryland.  Defendant
Randy Eppard was the director of the training school and
Plaintiffs' direct supervisor at the time that Plaintiffs'
employment was terminated.  At all times relevant to this action,
Defendants Dennis Meyers, William Halbert, and John T. Menocal
were members of the Fund's Board of Trustees.

In their original complaint, Plaintiffs included claims
alleging violations of the Pregnancy Discrimination Act, 42
U.S.C. § 2000e(k); the Labor-Management Reporting and Disclosure

Act, 29 U.S.C. § 153 et seq. (LMRDA); the Employee Retirement

Income Security Act, 29 U.S.C. § 1140 et seq.; § 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq; Article 49B §

14 et seq. of the Maryland Code; and § 2-222 of the Prince

George's County Code.  In response to a motion to dismiss,

Plaintiffs withdrew their claims under the LMRDA.  The Court

granted the motion to dismiss as to the Pregnancy Discrimination

Act claim.  In opposition to the Motion for Summary Judgment,

Plaintiffs indicated that they were withdrawing all of the

remaining claims except for their claims under the Prince

George's County Code.  Although it was not apparent from the

Amended Complaint, Plaintiffs' opposition to the summary judgment

motion seems to specify that Plaintiffs are attempting to assert

a retaliation claim under the County Code.  They are alleging

that their employment was terminated because they complained

about what they considered to be a sexually hostile work

environment.  The relevant facts, viewed in the light most

favorable to Plaintiffs as the non-moving parties, are as

follows.

Noonan began working for the Fund in 1980 and Wyrostek in

1988.  Eppard was hired as the director of the Fund in April of

2003.  The training school is administered by a very small office

staff, with less than 15 employees.

Plaintiffs assert that during the time relevant to this

2

action, there was only one computer in the office with internet
access.  This computer was located in such a way that other
people in the office could not see what was being viewed on the
computer.  In May of 2003, Wyrostek was working online on this
computer when a "pop-up" ad appeared on the screen that she
describes as having "a sexual connotation to it."  Wyrostek Dep.
49.  Another "pop-up" appeared a few days later that was "a
little more suggestive."  Id.  Shortly thereafter, Wyrostek
noticed several internet addresses on the "address bar" of the
internet browser that she did not recognize.  She decided to
click on those addresses and was directed to pornographic images.
She then proceeded to investigate the "history" feature of the
internet browser, clicked on unfamiliar websites listed there,
and was exposed to additional pornographic material.

Wyrostek discussed with Noonan what had happened and what
she discovered.  Wyrostek and Noonan drew the conclusion that
Eppard must have been the one viewing the pornography because
they believed that he was the only one in the office in the
evenings, at the times that the browser's history indicated that
the images had been viewed.  Noonan went to Defendant Menocal and
told him that Wyrostek was experiencing the "pop-ups" on her
computer and that she believed that Eppard was the party
responsible.

Out of concern that she would be seen as the individual

responsible for accessing pornography from the Fund's computer,
Wyrostek went to Defendant Meyers to tell him what she had
encountered.  Although Meyers denies it, Wyrostek testified that
Meyers instructed her to "get some proof" as to who was accessing
pornography from the Fund's computers.  She states that Meyers
asked her to make copies of the offending material.  Plaintiffs'
Opposition describes this task as "odious," Opp. 3, but
Plaintiffs nowhere state that Wyrostek ever told Meyers that she
objected to this assignment.

Around this same time, Noonan decided to resign from her
position at the Fund because she was pregnant with her second
child and was contemplating a move to New York.[1]  She informed

---

[1] In her deposition, Noonan stated clearly that "having
[her] second child, [and] moving" were the only things that she
could recall as reasons for resigning.  Noonan Dep. 25.  In her
affidavit submitted with her opposition to Defendants' motion,
Noonan now states that, in addition to her pregnancy and her
contemplated move to New York, her decision to resign was also
prompted by the sexually hostile work environment at the training
center and an offensive remark made to her by Eppard.  Noonan
Aff. ¶ 3.  It is well established that "[a] genuine issue of
material fact is not created where the only issue of fact is to
determine which of the two conflicting versions of the
plaintiff's testimony is correct." Barwick v. Celotex Corp., 736
F.2d 946, 960 (4th Cir. 1984); see also Rohrbough v. Wyeth Labs.,
Inc., 916 F.2d 970, 975-76 (4th Cir. 1990) (disregarding
affidavit of witness that contradicted witness's own prior sworn
deposition testimony).  Accordingly, this Court will disregard
Noonan's claim that her resignation was based upon factors
related to her work environment, to the extent such evidence is
even relevant.

everyone at the training school of her intention to resign,
including Eppard.  Specifically, she advised Eppard that she
would be leaving sometime in July.  A new employee, a female, was
hired and trained to replace Noonan and a going away party was
planned.

In July of 2003, Noonan alleges that Eppard made what she
considered to be an inappropriate comment concerning her
pregnancy.  Noonan testified that as she walked into the lounge
area of the training school, Eppard remarked, "you're not at all
fat; you were made for having babies; I bet women are jealous of
you."  Noonan Dep. 55.  According to Noonan, this was a "random"
remark, <u>id.</u>, and Plaintiffs cite no other inappropriate comments
on the part of Eppard.

Also in that same July time frame, Eppard approached Noonan
and requested that she write a formal letter of resignation.  She
did so and gave it to Eppard on the same day that he requested
it.  A few days later, on or about July 16, 2003, Eppard
instructed Wyrostek to make copies of Noonan's letter of
resignation so that it could be distributed at an upcoming
meeting of the Board of Trustees.  Wyrostek obtained the letter
from Noonan.  Later that same day, however, Noonan approached
Wyrostek and said that she had changed her mind about resigning.
Noonan explained that her husband had lost his job and, because
of that, she would need to come back to work.  She requested that

Wyrostek get rid of the letter and Wyrostek did so, by shredding
it.

Also on that same day, Noonan told Eppard that she had
changed her mind and would not be resigning.  According to
Noonan, Eppard replied, "I'm glad; I enjoy working with you," and
"I'm glad you are staying."  Noonan Dep. 41-42.  The next
morning, Noonan and Eppard had an exchange in which Eppard
confirmed Noonan's decision not to resign and confided that he
was "sticking his neck out on the line for [Noonan]" by allowing
her to withdraw her resignation.  Id. at 45.  In that same
conversation, Eppard asked for the resignation letter.  Noonan
explained that there was no letter, as Wyrostek had shredded it.
Noonan testified that Eppard expressed concern that Wyrostek had
taken that action, commenting, "[i]t was a legal document;
Barbara shouldn't have destroyed it; I really need that letter."
Id. at 46.

That afternoon after lunch, Eppard called Noonan into his
office.  Noonan testified that Eppard told her that he was
accepting her resignation, that she was "terminated, fired."  Id.
49.  After relating to Wyrostek that she had been fired, she
collected her personal belongings and left.

Eppard then asked Wyrostek to write a letter explaining her
involvement in destroying Noonan's resignation letter.  Wyrostek
wrote the letter as instructed and gave it to Eppard.  Although

Wyrostek now denies that she ever copied Noonan's letter, she states in the letter that she provided to Eppard that she had already made the copies when Noonan asked her to destroy them. Ex. B to Eppard Decl.

Noonan's last day of employment, July 17, 2003, was a Thursday.  Because Wyrostek was scheduled to be off that Friday, her next day in the office was Monday, July 21, 2003.  Shortly after she arrived that morning, Eppard called her into his office and told her that she was being terminated for destroying Noonan's letter of resignation.

After her termination, Wyrostek filed a complaint with the Prince George's County Human Relations Commission ("PGCHRC") alleging that "pornographic pop-ups [] displayed constantly on [her] computer" created a hostile work environment.  Nov. 10, 2003 Charge of Discrimination.  She also alleged that she was fired in retaliation for complaining about the pornography.  In a Determination dated February 25, 2004, the PGCHRC concluded that there was insufficient evidence to support her charges.  Unlike, Wyrostek, Noonan never filed a charge with the PGCHRC.  Instead, she attempted to file her complaint with the Equal Employment Opportunity Commission (EEOC).  She was told, however, that her employer was not covered by any applicable statute.  Noonan Dec. ¶ 11.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. Unsupported speculation is insufficient to defeat a motion for summary judgment. Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). Furthermore, the mere existence of some factual dispute is insufficient to

defeat a motion for summary judgment; there must be a genuine
issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 247-48 (1986).  Thus, only disputes over those facts
that might affect the outcome of the case under the governing law
are considered to be "material."  <u>Id.</u>

**III. DISCUSSION**

    <u>A. Wyrostek's claim</u>

    As mentioned above, the precise nature of Plaintiffs' claims
is less than clear.  In their presentation of their allegations,
they characterize those allegations as demonstrating that a
"sexually hostile work environment was created, facilitated, and
maintained by defendant Eppard through his repeated recovery,
viewing and displaying of explicit pornography."  Opp. 2.  Not
only is this characterization somewhat disconnected with the
actual facts in the record, it is somewhat disconnected with the
arguments Plaintiffs advance in their pleadings.  Plaintiffs
never seriously develop or advance an argument for a sexually
hostile work environment.  Instead, they focus on a retaliation
theory.  <u>See</u> Opp. 14-15 (analyzing their retaliation claim under
the <u>McDonell Douglas</u> framework and concluding that "plaintiffs,
in retaliation were subsequently terminated as a result of said
complaints and objections").

    Plaintiffs' reluctance to present arguments regarding a
hostile work environment claim is understandable in that such

9

arguments would clearly fail.  To establish a claim for a hostile work environment, a plaintiff must show:

> 1) that the conduct in question was unwelcomed;
>
> 2) that the harassment was based on sex;
>
> 3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and
>
> 4) that some basis exists for imputing liability to the employer.

Swentek v. USAIR, Inc., 830 F.2d 552, 557 (4th Cir. 1987).  In making the determination as to whether the alleged conduct was severe or pervasive, courts must examine the totality of circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998).

Here, Wyrostek was subjected to two suggestive pop-up ads that she was able to easily and immediately delete from her computer screen.  As for the exposure to actual pornographic images that Wyrostek experienced, much of that exposure was the result of her own actions in clicking on addresses that were unfamiliar to her.  To the extent that she claims she was forced to re-view those images pursuant to the alleged instruction of Meyers, the Court notes that there is nothing in the record to

indicate that she ever revealed to Meyers any reluctance on her part to carrying out that instruction.  Certainly, nothing in the record supports the conclusion that Meyers intended these instructions to be harassing or humiliating for Wyrostek.

To the extent Wyrostek is asserting a retaliation claim, the Court begins by questioning whether § 2-222 of the Prince George's County Code even supports such a claim.  Section 2-222 provides that "[n]o employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify or assign employees because of discrimination."  "Discrimination" is defined in § 2-186 of the County Code as

> acting, failing to act, or unduly delaying
> any action regarding any person because of
> race, religion, color, sex, national origin,
> age (except as required by State or federal
> law), occupation, familial status, marital
> status, political opinion, personal
> appearance, sexual orientation, or physical
> or mental handicap, in such a way that such
> person is adversely affected in the areas of
> housing and residential real estate,
> employment, law enforcement, education,
> financial lending, public accommodations, or
> commercial real estate.

Unlike federal discrimination statutes that explicitly provide a remedy for employees that suffer an adverse employment action in retaliation for "participat[ing]" in protected activities or

"oppos[ing]" unlawful employment practices,[2] there does not

appear to be a similar retaliation provision in the County Code.

Several of the principle cases relied upon by Plaintiffs very

clearly were decided under federal retaliation statutes and not

under a more general discrimination statute such as § 2-222.

See, e.g., <u>EEOC v. Navy Federal Credit Union</u>, 424 F.3d 397 (4th

Cir. 2005) ("In assessing the EEOC's retaliation claims, we are

obligated to begin with the language of the relevant statutory

provisions.  In pertinent part, section 704(a) of Title VII

prohibits an employer from taking an adverse employment action

against any employee 'because he has opposed any practice made an

unlawful practice under this subchapter.'"); <u>Anderson v. G.D.C.,</u>

<u>Inc.</u>, 281 F.3d 452, 457-458 (4th Cir. 2002) (observing  "Title

VII prohibits discrimination against any employee who 'has

opposed any . . . unlawful employment practice' under Title VII,"

citing 42 U.S.C.A. §§ 2000e-3(a)).

    Assuming that a retaliation claim can be established under

---

    [2] <u>See</u> 42 U.S.C.A. § 2000e-3, which provides, "[i]t shall be
an unlawful employment practice for an employer to discriminate
against any of his employees or applicants for employment, for an
employment agency, or joint labor-management committee
controlling apprenticeship or other training or retraining,
including on-the-job training programs, to discriminate against
any individual, or for a labor organization to discriminate
against any member thereof or applicant for membership, because
he has opposed any practice made an unlawful employment practice
by this subchapter, or because he has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this subchapter."

the County Code, the Court concludes that such a claim is
unsupported by the record.  A plaintiff lacking direct evidence
of retaliation, as here, may utilize the <u>McDonnell Douglas Corp.
v. Green</u>[3] framework to prove a claim of retaliation.  <u>See</u> <u>Navy
Federal Credit Union</u>, 424 F.3d at 405.  Under the <u>McDonnell
Douglas</u> framework, the plaintiff must first establish a prima
facie case of retaliation.  <u>Price v. Thompson</u>, 380 F.3d 209, 212
(4th Cir. 2005).  To establish a prima face case of retaliation,
the plaintiff must show that (1) she engaged in a protected
activity, such as filing an EEO complaint; (2) that the defendant
took an adverse employment action against her; and (3) that a
causal relationship existed between the protected activity and
the adverse employment activity.  <u>Navy Federal Credit Union</u>, 424
F.3d at 406.[4]  If a plaintiff meets that burden, the burden
shifts to the employer to set forth a legitimate, non-retaliatory
explanation for the action.  The plaintiff then must show that
the employer's proffered reasons are pretextual or her claim will
fail.  <u>Id.</u> at 405.  More specifically, the plaintiff can prove

---

[3] 411 U.S. 729 (1973).

[4] Consistent with the parties' general fusion and confusion
of legal theories, Plaintiffs and Defendants set out the four
prong prima facie case for discrimination in general instead of
the three prong prima facie case for a retaliation claim.  Defs'
Mot. 12; Pls.' Opp. 14.  When Plaintiffs discuss the fourth prong
of the discrimination test, <u>i.e.</u>, "under circumstances supporting
an inference of discrimination," however, they clearly discuss it
in terms of retaliation.  <u>See</u> Pls.' Opp. 15 (as proof under the
fourth prong, arguing that they have provided evidence that "the
plaintiffs, in retaliation, were subsequently terminated as a
result of said complaints and objections.")

pretext by showing that the "explanation is 'unworthy of
credence' or by offering other forms of circumstantial evidence
sufficiently probative of [retaliation]." Mereish v. Walker, 359
F.3d 330, 336 (4th Cir. 2004).

Although this Court has concluded that Plaintiffs were not
confronted with an actionable hostile work environment, courts
have held that Title VII's anti-retaliation provision "protects
activity in opposition not only to employment actions actually
unlawful under Title VII but also employment actions an employee
reasonably believes to be unlawful." Navy Federal Credit Union,
424 F.3d 406. Were the Court to assume that it could freely
extend aspects of Title VII jurisprudence to claims under the
Prince George's County Code, the Court could conclude that
Plaintiffs meet the first prong because they opposed what they
reasonably believed to be unlawful conduct. Wyrostek has
established the second prong as her termination certainly
constitutes an adverse employment action.

As to the third prong, the temporal proximity of Wyrostek's
raising the issue of internet pornography and her termination
might be sufficient to suggest a causal relationship. See Allen
v. Rumsfeld, 273 F.Supp.2d 695, 707-08 (D. Md. 2003) ("Evidence
that the alleged adverse action occurred shortly after the
employer became aware of the protected activity is sufficient to
satisfy the less onerous burden of making a prima facie case of
causation."). This inference, however, is significantly weakened
in that Plaintiffs have provided no evidence that Eppard was even

14

aware at the time he terminated Wyrostek that she had made a complaint about the pop-up ads.  Both Plaintiffs acknowledge that they never mentioned their suspicions to Eppard.  Wyrostek Dep. 79; Noonan Dep. 91.  Eppard testified that he did not learn about their suspicions until after he terminated Wyrostek, Eppard Decl. ¶ 10, and Meyers and Menocal both state that they never mentioned it to Eppard.  Meyers Decl. ¶ 8; Menocal Decl. ¶ 8.

Were the Court to conclude, however, that Wyrostek is able to establish a prima facie case of retaliation, the Court must grant summary judgment for Defendants, nonetheless, as Defendants have proffered a legitimate, non-retaliatory explanation for Wyrostek's termination which Plaintiffs have not shown to be pretextual.  Eppard, as Wyrostek's immediate supervisor, directed her to copy Noonan's resignation letter and place those copies in folders in preparation for a meeting of the Board of Trustees. Wyrostek acknowledges that she was given this instruction and further admits that, despite that explicit instruction, she shredded the letter at the request of Noonan.  Undermining any inference that Eppard simply used Wyrostek's failure to follow his instruction as a pretext to fire her is Noonan's testimony that when Eppard first learned that the letter had been destroyed, he immediately expressed his displeasure.  Noonan Dep. 45-46.  Plaintiffs have offered nothing to establish that this explanation is unworthy of credence.

Accordingly, Defendants are entitled to summary judgment as to Wyrostek's claims under § 2-222 of the Prince George's County

Code.

    B. Noonan's Claim

    Before bringing a claim under § 2-222 of the Prince George's

County Code, a plaintiff must first file a complaint of

discrimination with the PGCHRC.  Md. Code. Ann., Article 49B §

42(b)(2).  The failure to do so precludes the plaintiff from

bringing an action in court.  See Rachel-Smith v. FTData, Inc.,

247 F.Supp.2d 734, 743-44 (D. Md. 2003).  It is undisputed that

Plaintiff Noonan did not file a complaint with that agency.

    To preserve her claim, Noonan argues that she is entitled to

proceed under the "single filing" rule.  The "single-filing

rule," as applied in those circuits which have adopted it, allows

plaintiffs who have not exhausted their administrative remedies

to join in a lawsuit with other plaintiffs who have exhausted

their remedies, provided that all plaintiffs' claims are

substantially similar and that the administrative charge itself

gave notice of the charge's collective nature.  White v. BFI

Waste Services, LLC, 375 F.3d 288, 293-294 (4th Cir. 2004).  The

Fourth Circuit has not expressly adopted the rule.

    Assuming that this rule could be applied in this circuit,

this Court cannot conclude that it should be applied in this

instance.  While Noonan's and Wyrostek's claims share some

commonality related to their joint investigation of the pop-up

ads, nothing in the charge would give notice of any collective

16

aspect of the claim.  Although Noonan is referenced in Wyrostek's charge, it was only in the context of the destruction of her resignation letter creating the pretext for the firing of Wyrostek.

Thus, the Court finds that Noonan's claim must be dismissed.[5]

## IV. CONCLUSION

For all of the above-stated reasons, the Court determines that Defendants' Motion for Summary Judgment must be granted.  A separate order consistent with this memorandum will issue.

                                    /s/
                         William M. Nickerson
                         Senior United States District Judge

Dated: November 10, 2005

---

[5] Were Noonan able to clear this initial hurdle, she would not prevail on her claim for many of the same reasons that Wyrostek's claim must fail.  In addition, the version of events that she is compelled to advance to support her retaliation claim is so unlikely as to strain credulity.  If Eppard sought to retaliate against Noonan for reporting him for viewing pornography on the internet, it makes no sense that he would allow her to withdraw her resignation on July 16th, as Noonan claims, only to turn around and fire her on the 17th.